**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHILPA GROVER and FREDRIC A. PRESS, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>MACMILLAN, SIMON & SCHUSTER, HACHETTE BOOK GROUP, HARPERCOLLINS PUBLISHERS, INC., PENGUIN GROUP (USA), INC., RANDOM HOUSE, INC. AND APPLE, INC.,<br><br>      Defendants. | No. 11-CV-5576-GBD |
| JEFFREY EVANS and CLARISSA WEISS on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>MACMILLAN, SIMON & SCHUSTER, HACHETTE BOOK GROUP, HARPERCOLLLINS PUBLISHERS, INC., PENGUIN GROUP (USA), INC., RANDOM HOUSE, INC. and APPLE, INC.,<br><br>      Defendant | No. 11-CV-5609-GBD |
| RHONDA BURSTEIN,<br><br>      Plaintiff,<br><br>   v.<br><br>HACHETTE BOOK GROUP, INC., HARPERCOLLINS PUBLISHERS, INC., MACMILLAN PUBLISHERS, INC., PENGUIN GROUP (USA) INC., SIMON & SCHUSTER, INC., RANDOM HOUSE, INC., APPLE, INC., AMAZON.COM, INC., and BARNES & NOBLE, INC.,<br><br>      Defendants. | No. 11-CV-5621-GBD |

| | |
|---|---|
| JUAN SOTOMAYOR,<br><br>   Plaintiff,<br><br>  v.<br><br>HACHETTE BOOK GROUP, INC., HARPERCOLLINS PUBLISHERS, INC., MACMILLAN PUBLISHERS, INC., PENGUIN GROUP (USA) INC., SIMON & SCHUSTER, INC., RANDOM HOUSE, INC., APPLE, INC., and AMAZON.COM, INC.,<br><br>   Defendants. | No. 11-CV-5707-UA |
| ROBERT CHEATHAM, on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>HACHETTE BOOK GROUP, INC.; HARPERCOLLINS PUBLISHERS, INC.; MACMILLAN PUBLISHERS, INC.; PENGUIN GROUP (USA) INC.; SIMON & SCHUSTER, INC.; and APPLE, INC.,<br><br>   Defendants. | No. 11-CV-5750-UA |

**PROPOSED INTERVENOR ANTHONY PETRU'S MEMORANDUM LAW IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO TRANSFER OR, IN THE ALTERNATIVE, STAY ACTION**

**TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ..................................................................................................................1

II.  BACKGROUND FACTS......................................................................................................1

    A.   Brief Background of Actions..................................................................................1

    B.   After Months of Investigation, the *Petru* Complaint is the First Filed Action .................................................................................................................2

    C.   Immediately After the First Filed Petru Action, Copycat Complaints are Filed .................................................................................................................2

III. ARGUMENT..........................................................................................................................5

    A.   Intervenor-Plaintiff Petru Should Be Permitted to Intervene for the Limited Purpose of Requesting a Transfer to the Northern District of California, or in the Alternative for a Stay of the Related Actions .....................5

        1.   Intervenor Petru should be permitted to intervene as a matter of right..............................................................................................................5

        2.   Alternatively, permissive intervention by Intervenor Petru is warranted................................................................................................7

    B.   Transfer to the Northern District of California is Appropriate Under the "First-to File" Rule, or in the Alternative, This Court Should Stay the Related Actions .................................................................................................8

        1.   *Petru* is the first-filed action and thus should have priority.........................8

        2.   The balance of convenience does not shift the priority to the Related Actions....................................................................9

        3.   There are no special circumstances that warrant a shift of priority to the Related Actions..................................................................10

IV.  CONCLUSION....................................................................................................................11

010260-11 470123 V1

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bennett v. Bed Bath & Beyond, Inc.*,
  2011 U.S. Dist. LEXIS 79973 (N.D. Cal. July 22, 2011)..................................................10

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
  149 F.R.D. 55 (S.D.N.Y. 1993) ........................................................................................5, 6

*First City Nat'l Bank & Trust Co. v. Simmons*,
  878 F.2d 76 (2d Cir. 1989).........................................................................................8, 10, 11

*Fuller v. Abercrombie & Fitch Stores, Inc.*,
  370 F. Supp. 2d 686 (E.D. Tenn. 2005) .................................................................................8

*Heilman v. Cherniss*,
  2011 U.S. Dist. LEXIS 17168 (E.D. Cal. Feb. 22, 2011)........................................................8

*Hyland v. Harrison*,
  2006 U.S. Dist. LEXIS 5744 (D. Del. Feb. 7, 2006) .............................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ...........................................................................................6

*In Re Republic Western Ins. Co. Ins. Coverage Litig.*,
  206 F. Supp. 2d 1364 (J.P.M.L. 2002).................................................................................10

*Jumapao v. Wash. Mut. Bank*,
  2007 U.S. Dist. LEXIS 88216 (S.D. Cal. Nov. 29, 2007) ......................................................7

*New York News, Inc. v. Kheel*,
  972 F.2d 482 (2d Cir. 1992).....................................................................................................5

*Petrik v. Reliant Pharms., Inc.*,
  2007 U.S. Dist. LEXIS 82037 (M.D. Fla. Nov. 5, 2007) ......................................................7

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981)................................................................................................................6

*William Gluckin & Co. v. International Playtex Corp.*,
  407 F.2d 177 (2d Cir. 1969)..................................................................................................10

*Zenith Radio Corp. v. Hazeltine, Research, Inc.*,
  401 U.S. 321 (1971)................................................................................................................6

**STATUTES**

15 U.S.C. § 1.............................................................................................................................2, 3, 4

28 U.S.C. § 1407 ..................................................................................................................4

Cal Bus. & Prof. Code §§ 16720 *et seq.* ..........................................................................2, 3

**Other Authorities**

Federal Rule of Civil Procedure 23 .......................................................................................9

Federal Rule of Civil Procedure 24 ....................................................................................5, 7

I.   INTRODUCTION

Proposed Intervenor Anthony Petru is one of two proposed class representatives in *Petru v. Apple Inc. et al.*, a nationwide class action filed in the U.S. District Court for the Northern District of California on August 9, 2011.  The core allegations in *Petru* are identical to those brought in the above captioned actions – whether Apple Inc. ("Apple") and some of the nation's top publishers, including HarperCollins Publishers, Hachette Book Group, Macmillan Publishers, Penguin Group (USA) Inc. and Simon & Schuster Inc. (the "Publisher Defendants"), illegally fix prices of electronic books, also known as "eBooks."[1]

Because the *Petru* action and the Related Actions are effectively the same case involving the same price-fixing conspiracy with different named plaintiffs, the "first-to-file" rule dictates that the Related Actions should, at a minimum, be transferred to the court where *Petru* is pending, or, in the alternative, stayed pending the outcome of the *Petru* matter.  Accordingly, Intervenor Petru respectfully requests that the Court transfer the Related Actions to the Northern District of California or, in the alternative, stay the Related Actions.

II.   BACKGROUND FACTS

A.   **Brief Background of Actions**

With 2007's introduction of the Amazon Kindle eBook reader, Amazon.com set prices for eBooks significantly below prices for paper books.  As a result, Amazon.com quickly became a market leader in the nascent eBook market in the United States.  *See Petru et al v. Apple Inc., et al.*, Class Action Complaint, No. 11-3892 (N.D. Cal.) ("*Petru* Complaint") at ¶ 1 (attached as Zweig Decl., Ex. 1).  Disappointed with Amazon's pro-consumer pricing, which threatened their sales of higher-priced paper books, the Publisher Defendants hatched a plan.  *Id*. at ¶¶ 3-4.  Recognizing that a single publisher raising prices and acting alone would lose sales in the ever expanding eBook market, the Publisher Defendants coordinated among themselves (and also

---

[1] *Compare* Declaration of Jason Zweig in Support of Proposed Intervenor Anthony Petru's Motion to Intervene and Motion to Transfer, Or, In The Alternative, Stay ("Zweig Decl."), Ex. 1 at ¶ 1 (*Petru* Class Action Complaint) *with Grover* Class Action Complaint, Ex. 2 at ¶ 3.  *See also* Zweig Decl., Ex. 3-6.  Collectively, the Southern District of New York actions will hereinafter be referred to as the "Related Actions."

010260-11 470123 V1

with Apple) to implement a new pricing model (referred to as the "Agency model"), uniformly raising prices on all first release fiction and non-fiction, effectively halting the discounting of eBook prices and forcing Amazon to abandon its pro-consumer pricing. *Id*. Apple facilitated changing the eBook pricing model by conspiring with the Publisher Defendants in connection with Apple's entry into the eBook market, given Apple's unwillingness to sell eBooks near or below Apple's wholesale cost, thereby pinching the company's profit margins. *Id*. at ¶¶ 6-8.

**B.    After Months of Investigation, the *Petru* Complaint is the First Filed Action**

After months of investigation, on August 9, 2011, Plaintiffs Anthony Petru and Marcus Mathis filed a nationwide class action against the alleged instigators of the conspiracy described briefly above, the Publisher Defendants and Apple, in the U.S. District Court for the Northern District of California. *See generally Petru* Complaint. Apple is headquartered in the Northern District of California, and as alleged in the *Petru* Complaint, is a central figure in the alleged conspiracy. In fact, Apple's launch of the iPad is what enabled this conspiracy to take flight. *See*, *e.g.*, *id*. at ¶¶ 5-10, 17.

Alleging violations of 15 U.S.C. § 1, CAL BUS. & PROF. CODE §§ 16720 *et seq.*, and corresponding violations of state antitrust, restraint of trade and consumer protection statutes, the *Petru* Plaintiffs seek recovery on behalf of "all persons who purchased an eBook published by a Publisher Defendant after the Agency model pricing was adopted." *Id*. at ¶ 114.[2]

**C.    Immediately After the First Filed Petru Action, Copycat Complaints are Filed**

The details and impact of the conspiracy took months to investigate and set forth in a cogent manner, including economic analyses. The filing of the *Petru* action generated national news. The day after the *Petru* Complaint was filed, the first of five copycat complaints filed (so far) in the Southern District of New York reached the clerk's office, with others spun off of word

---

[2] Counsel for the *Petru* Plaintiffs filed a second action in the Northern District of California brought by 23 additional residents of various states on August 18, 2011. *See Gilstrap, et al. v. Apple Inc., et al.*, Case No. C11-04035 (N.D. Cal.) (Zweig Decl., Ex. 10).

processors shortly thereafter.[3] With *de minimis* exceptions, each of the imitation Related Actions bring nearly identical causes of actions against Apple and the Publisher Defendants as brought in the first filed *Petru* Complaint, doing so on behalf of the same group of people, *i.e.*, purchasers of eBooks that were more expensive absent Defendants' alleged conduct:

- **August 10, 2011** - *Grover et al. v. Macmillan, et al.,* Case No. 11-cv-5576 (S.D.N.Y.), alleging violations of 15 U.S.C. § 1, CAL BUS. & PROF. CODE §§ 16720 *et seq.*, and corresponding violations of state antitrust law under California and Maryland law against Apple and the Publisher Defendants and also Random House, Inc., on behalf of "All Persons Who Purchased eBooks of Publisher Defendants [defined to include Random House] Through Apple, Amazon, or Other eBook Retailers Subject to the Publisher Defendants' Agency Model Pricing Scheme and Priced Above $9.99, Excluding Defendants, Any Entity In Which Defendants Have A Controlling Interest, any of The Officers, Directors, or Employees of Defendants, the Legal Representatives, Heirs, Successors and Assigns of Defendants, and Any Judge To Whom This Case Is Assigned And His Or Her Immediate Family." *See* Zweig Decl., Ex. 2.

- **August 11, 2011** – *Evans et al. v. Macmillan, et al.*, Case No. 11-cv-5609 (S.D.N.Y.), alleging violations of 15 U.S.C. § 1, CAL BUS. & PROF. CODE §§ 16720 *et seq.*, and corresponding violations of state antitrust law under New York and Michigan law against Apple and the Publisher Defendants and also Random House, Inc., using the same class definition as found in the *Grover* Complaint filed the previous day by the same counsel. *See* Zweig Decl., Ex. 3.

- **August 12, 2011** – *Burstein v. Hachette Book Group, Inc., et al.*, Case No. 11-cv-5621 (S.D.N.Y.), alleging violations of 15 U.S.C. § 1, but no state law claims, against Apple, the Publisher Defendants (and also Random House, Inc., Amazon.com, Inc. and Barnes & Noble, Inc.), on behalf of "All persons who purchased eBooks of Publisher Defendants [defined to include Random House] through Apple, Amazon, Barnes & Noble, or other eBook retailers subject to the Publisher Defendants' agency model pricing scheme, excluding Defendants, any entity in which defendants have a controlling interest, any of the officers, directors or employees of Defendants, the legal representatives, heirs successors and assigns of Defendants." *See* Zweig Decl., Ex. 4.

---

[3] In addition to the *Petru* and *Gilstrap* actions filed by Intervenor Petru and his counsel, two other actions with similar allegations as uncovered by Mr. Petru have been filed in the Northern District of California, specifically *Diamond et al v. Apple Inc., et al.,* No. 11-cv-3954 (N.D. Cal.) (Zweig Decl., Ex. 7) and *Albeck v. Apple Inc*., No. 11-cv-4110 (N.D. Cal.) (Zweig Decl., Ex. 11).

- 3 -
010260-11 470123 V1

- **August 16, 2011** – *Sotomayor v. Hachette Book Group, Inc., et al.*, Case No. 11-cv-5707 (S.D.N.Y.), alleging violations of 15 U.S.C. § 1, but no state law claims, against Apple, the Publisher Defendants (and also Random House, Inc. and Amazon.com, Inc.), on behalf of "All persons who purchased eBooks published by the Publisher Defendants [defined to include Random House] through Apple, Amazon, or other eBook retailers subject to the Publisher Defendants' agency model pricing scheme, excluding Defendants, any entity in which defendants have a controlling interest, any of the officers, directors or employees of Defendants, and the legal representatives, heirs successors and assigns of Defendants." *See* Zweig Decl., Ex. 5.

- **August 17, 2011** – *Cheatham v. Hachette Book Group, Inc., et al.*, Case No. 11-cv-5750 (S.D.N.Y.), alleging violations of 15 U.S.C. § 1 as well as unjust enrichment law, against Apple and the Publisher Defendants on behalf of "all persons in the United States who purchased eBooks published by one of the Publisher Defendants directly from a Publisher Defendant after the adoption of the Agency Model by that publisher. Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries of affiliated companies." *See* Zweig Decl., Ex. 6.

To date, however, no substantive work has been performed in any of the Related Actions. *See generally* Zweig Decl., Ex. 8 (attaching CM/ECF docket reports of the actions filed in this district as of August 23, 2011). In fact, it does not appear from the dockets that the defendants have been served in any of the Related Actions, nor has defense counsel even entered any appearances. *Id.* As such, no motions to dismiss have been filed and discovery has yet to start.

Conceding the near carbon copy similarities between the first filed *Petru* action and the Related Actions, within a week of the filing of the *Petru* Complaint, the Plaintiffs in *Grover* and *Evans* filed a Motion to Transfer and Consolidate Related Antitrust Actions to Southern District of New York pursuant to 28 U.S.C. § 1407. *See* Zweig Decl., Ex. 9. However, the Judicial Panel on Multidistrict Litigation will not even hear oral argument until December 1, 2011,[4] and a

---

[4] The next scheduled JPML session during which the *Grover* and *Evans* Plaintiffs motion will be heard is December 1, 2011, at the Tomochichi United States Courthouse in Savannah, Georgia. *See* Judicial Panel on Multidistrict Litigation, Hearing Info, *available at* http://www.jpml.uscourts.gov/Hearing_Info/hearing_info.html (last visited August 23, 2011).

decision transferring and/or consolidating any of the underlying actions will not take place until sometime in December 2011 or January 2012 at the earliest.

Given the facts that no work has been performed in the Related Actions and that the interests of the Plaintiffs in those actions will already be protected by virtue of the *Petru* Complaint, Plaintiff Petru seeks to intervene in the present actions and requests that the Court transfer the Related Actions to the Northern District of California or, in the alternative, stay the Related Actions.

### III.   ARGUMENT

**A. Intervenor-Plaintiff Petru Should Be Permitted to Intervene for the Limited Purpose of Requesting a Transfer to the Northern District of California, or in the Alternative for a Stay of the Related Actions**

The requirements of Rule 24 of the Federal Rule of Civil Procedure should be liberally construed in favor of granting intervention. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993) (citing WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE:  CIVIL 2D § 1799).  Rule 24 provides that a non-party may intervene as a matter of right, or with the court's permission.  *See* Fed. R. Civ. P. 24.  Under either provision of Federal Rule of Civil Procedure 24, Intervenor Petru should be permitted to intervene.

#### 1.   Intervenor Petru should be permitted to intervene as a matter of right

Federal Rule of Civil Procedure 24(a) requires the proposed intervenor to satisfy four elements in order to intervene:  "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not [p]rotected adequately by the parties to the action." *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992).  While the burden is on the intervenor to meet these requirements, "[t]his burden, however, is minimal."  *Diduck*, 149 F.R.D. at 58 (citation omitted).  Each element is met here.

First, intervention is timely.  Intervenor Petru has filed this motion within 10 business days of the filing of the *Grover* action.  Defendants have not filed any responsive pleadings; no discovery has taken place; and certainly no motion for class certification has yet been filed.

Given the early stages of the *Grover* action and the Related Actions, the motion to intervene is timely.

Second, Intervenor Petru possesses a significant, protectable interest in the Related Actions. Here, the Related Actions raise the same antitrust price-fixing conspiracy as alleged and uncovered in the *Petru* action and seek to certify the same nationwide class, or in the alternative the certification of state subclasses. With these overlapping claims and parties, Intervenor Petru has an interest in ensuring the protection of his and the classes' claims from inconsistent rulings, and in the expeditious prosecution of the action against Defendants.[5]

Third, Intervenor Petru's interests will be significantly impaired should the Related Actions be allowed to proceed. In addition to the potential risk of inconsistent judgments that may arise, to date, Intervenor-Plaintiffs have already conducted extensive investigation to uncover and allege class-wide practices constituting antitrust violations and have devoted significant time and resources working with experts regarding the alleged conspiracy. Allowing any of the Related Actions to proceed independently will only subject Intervenor Petru, Defendants and the Court to further complications, delay and wasted resources. In addition, the risk of conflicting opinions regarding discovery, as well as class and merits issues, is high, if cases were allowed to proceed in several districts. Moreover, Petru's "interest in recovery of monies due to the [classes] would be impaired by an adverse decision in this case by the principal of stare decisis." *Diduck*, 149 F.R.D. at 58.

---

[5] Plaintiffs in the Related Actions have added three additional defendants that they contend participated in the price-fixing conspiracy uncovered by Petru. The fact that they named a few more defendants counsels in favor of a transfer to ensure that the parties to the single price-fixing conspiracy are subject to the same discovery and substantive orders. Moreover, the addition of these defendants does not weigh against a stay. Liability for antitrust violations is joint and several. *See*, *e.g.*, *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 635 (1981); *Zenith Radio Corp. v. Hazeltine, Research, Inc*., 401 U.S. 321, 342-48 (1971). As a result, "each class member … may recover his or her full loss from any defendant who can be shown to have participated in the alleged conspiracy." *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493, 519 (S.D.N.Y. 1996) (citation omitted). Thus, the Class's interest weighs in favor of a single, cohesive attack in one court, rather than disparate and potentially inconsistent attacks or rulings in several courts.

Finally, Intervenor Petru and absent class members' interests are not adequately protected by the plaintiffs in the Related Actions. The *Petru* Plaintiffs conducted the extensive pre-suit investigation necessary to fully develop the allegations and theories in this lawsuit. Each of the Related Actions is merely a copycat of the *Petru* action; they allege no additional material facts that were not alleged by Intervenor Petru. Thus, the interests of absent class members are not adequately protected, and the request for intervention should be granted.

### 2. Alternatively, permissive intervention by Intervenor Petru is warranted

A non-party may intervene if he "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1)(B). When deciding whether to grant permissive intervention, the Court should consider whether intervention will unduly delay or prejudice the adjudication of the existing parties' rights. Permissive intervention should be ordered where, as here, a class representative seeks timely intervention for the purpose of staying a later-filed class action that is in its formative stage. *See*, *e.g.*, *Hyland v. Harrison*, No. 05-162, 2006 U.S. Dist. LEXIS 5744 (D. Del. Feb. 7, 2006); *Jumapao v. Wash. Mut. Bank*, No. 06-CV-2285, 2007 U.S. Dist. LEXIS 88216 (S.D. Cal. Nov. 29, 2007); *Petrik v. Reliant Pharms., Inc.*, 2007 U.S. Dist. LEXIS 82037 (M.D. Fla. Nov. 5, 2007).

Here, Intervenor Petru should be allowed to intervene because the claims in the Related Actions are based on the same facts and circumstances, raising similar legal issues and seeking substantially the same relief as alleged in the *Petru* action. In fact, it appears that most of the facts in the Related Action complaints are simply a verbatim regurgitation of the *Petru* complaint. The claims in the Related Actions are encompassed in the *Petru* action, as the *Petru* Plaintiffs have alleged and will request that the District Court for the Northern District of California certify a nationwide class under federal antitrust law, or in the alternative, certify state subclass under various state antitrust laws including those raised by the plaintiffs here.[6]

In addition, permitting Intervenor Petru to intervene in this case will not cause any undue delay or prejudice pursuant to Federal Rule of Civil Procedure 24(b)(3). Allowing Intervenor

---

[6] *Compare* Zweig Decl., Ex. 1 *with* Zweig Decl., Ex. 2-6.

Petru to intervene and the issuance of an order transferring the case to the Northern District of California (or alternatively, staying these actions) merely allows the class claims to be litigated in a different federal court. Furthermore, since *Grover* and the other Related Actions remain in the early stages of litigation, no prejudice can be claimed.

**B.    Transfer to the Northern District of California is Appropriate Under the "First-to File" Rule, or in the Alternative, This Court Should Stay the Related Actions**

This Court should not commit scarce judicial resources to the Related Actions, which are virtually identical to the pending *Petru* action. Pursuant to the rule of federal comity, a district court may stay or transfer an action when a similar complaint has already been filed in another federal court. *See*, *e.g.*, *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 689 (E.D. Tenn. 2005); *Heilman v. Cherniss*, 2011 U.S. Dist. LEXIS 17168 (E.D. Cal. Feb. 22, 2011) (quoting *Barapind v. Reno*, 72 F. Supp. 2d 1132, 1144 (E.D. Cal. 1999), *aff'd*, 225 F.3d 1100 (9th Cir. 2000).

Moreover, the first-to-file rule is a well-established doctrine encouraging comity among federal courts of equal rank. It is "the well-settled principle in this Circuit that 'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience … or … special circumstances … giving priority to the second.'" *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986)) (citations omitted). Here, *Petru* was the first action filed and thus should have priority. *Id.* Moreover, neither the balance of convenience nor special circumstances shifts that priority to the Related Actions.

**1.    *Petru* is the first-filed action and thus should have priority**

The *Petru* action was filed on August 9, 2011, whereas the *Grover* action was filed on August 10, 2011, making *Petru* the earlier-filed action.[7] Moreover, this is not a case where a sudden public announcement triggered a race to the court house. Rather, the facts contained in

---

[7] *See* Zweig Decl., Ex. 1 (*Petru* Complaint).

- 8 -

the *Petru* action – which were subsequently copied – were pieced together and analyzed over a period of many, many months. Thus, it cannot be argued with any credulity that the *Petru* action simply hit the docket ahead of the Related Actions by happenstance.

### 2. The balance of convenience does not shift the priority to the Related Actions

The balance of convenience analysis does not overcome the first-to-file rule. In fact, based on the facts here, it *supports* the first-to-file rule.

Here, Intervenor Petru alleges that the unlawful price-fixing conspiracy, which is at the heart of every complaint on file, "was created, adopted, ratified and/or implemented at the corporate headquarters of Apple located in Cupertino, California and a substantial part of the anticompetitive conduct took place in California." *Petru* Compl., at ¶ 108. Communications between co-conspirator publishers "were conducted utilizing Apple, a California corporation, as an intermediary." *Id*. at ¶ 109. Similarly, "[o]ne of the chief architects of the unlawful conspiracy, Steve Jobs, is a resident of California and the CEO of Apple computers." *Id*. at ¶ 110.

Moreover, Petru alleges:

> Apple has acknowledged that California law applies to it nationwide with respect to the sale and purchase of eBooks. Specifically, Apple's iBookstore terms and condition provide that "[a]ll transactions on the App and Book Services are governed by California law, without giving effect to its conflict of law provisions." Apple's iBookstore terms and conditions also provide that "any claim or dispute with Apple or relating in any way to your use of the App and Book Services resides in the courts in the State of California."

*Id*. at ¶ 111. Intervenor Petru thus has sued on behalf of a nationwide California law class of persons pursuant to Federal Rule of Civil Procedure 23. The California Law Class consists of all persons in the United States who purchased eBooks published by defendants after specified actions. *Id.* at ¶ 112. Thus, the balance of convenience resides in California, from where the conspiracy emanated.

- 9 -

### 3. There are no special circumstances that warrant a shift of priority to the Related Actions

The plaintiffs in the Southern District of New York cannot make a showing of "special circumstances" that would warrant a departure from the first-to-file rule. *First City Nat'l Bank & Trust Co.*, 878 F.2d at 79. *See also William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (citing two examples of "special circumstances" – neither of which are present here). The pending Motion before the Judicial Panel on Multi-District Litigation does not constitute "special circumstances," nor should otherwise result in a denial of this motion.

In fact, the MDL Panel has previously held that motions such as the one brought by Intervenor Petru here should result in a denial of the centralization motion before the MDL Panel. *See*, *e.g.*, *In Re Republic Western Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364 (J.P.M.L. 2002). In *In Re Republic Western Insurance*, certain Plaintiffs sought transfer and centralization of four actions from the District of Rhode Island and two from the District of Massachusetts into one forum. Denying the motion based on motions to transfer venue pending in the district courts, the Panel stated:

> There is a reasonable prospect that the multidistrict character of the actions here before us may be eliminated by district court action on motions presently pending in the District of Massachusetts for transfer of venue of the two Massachusetts actions to the District of Rhode Island pursuant to 28 U.S.C. § 1404(a). If the Section 1404 motions are granted, all the actions in this litigation will be in a single district for all purposes and not, as is the case with Section 1407 transfer, for pretrial purposes only. Since the result of any Section 1404 transfer would also eliminate any need for our action under Section 1407, the Panel has concluded to deny transfer under Section 1407 at this time.

*Id.* at 1365. *See also Bennett v. Bed Bath & Beyond, Inc.*, No. C 11-2220, 2011 U.S. Dist. LEXIS 79973, at *4-5 (N.D. Cal. July 22, 2011) (granting transfer pursuant to first-to-file rule and rejecting Plaintiffs' request to defer ruling on a motion to transfer pending a decision by the MDL Panel and stating "This argument flips the proper procedural approach on its head. If this Court grants BBB's Motion and transfers this case, it will aid the Panel in its decision on whether

to treat the BBB actions as an MDL and, if so, the court to which that MDL ought to be assigned.").

Like in *In Re Republic Western Insurance Co.,* a decision by this Court to grant Intervenor Petru's motion would moot the pending motions before the MDL Panel. Moreover, a decision by this Court to grant Intervenor Petru's motion would result in *Petru* and all of the Related Actions being in one forum for all purposes, as opposed to just pretrial coordination. Finally, a decision to grant Intervenor Petru's motion would result in additional efficiencies as the motion before the MDL Panel will not be heard before the next JPML hearing in November 2011, and likely will not be ruled upon until early 2012. Accordingly, there are no "special circumstances" here that counsel against application of the first-to-file rule.

A decision here to defer to the District Court in California would "give[] proper weight to the necessity of avoiding duplicative litigations, thereby conserving judicial resources[, and]… seems to be the least abrasive method of judicial administration here." *First City Nat'l Bank & Trust Co.*, 878 F.2d at 80. Accordingly, Intervenor Petru's motion should be granted.

## IV.   CONCLUSION

For the foregoing reasons, Intervenor Petru respectfully requests that the Court transfer the Related Actions to the Northern District of California or, in the alternative, stay the Related Actions and grant him all such other relief as the Court deems necessary and appropriate.

DATED:  August 24, 2011                      Respectfully submitted,


                                             By:   /s/
                                             Jason A. Zweig (JZ-8107)
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             One Penn Plaza, 36th Floor
                                             New York, NY 10119
                                             Telephone:  (212) 752-5455
                                             Direct:  (212) 786-7347
                                             Facsimile:  (917) 210-3980
                                             jasonz@hbsslaw.com

- 11 -

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com

Jeff Friedman
Shana Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  (510) 725-3000
Facsimile:   (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

*Attorneys for Proposed Intervenor Anthony Petru*

- 12 -

## **CERTIFICATE OF SERVICE**

      I, Jason A. Zweig, herby certify that I am one of the attorneys for Proposed Intervenor Anthony Petru and that, and on this day I caused a copy of the annexed hereto to be served on all counsel of record in this proceeding via CM/ECF.

Dated: August 24, 2011                                    By:   /s/ Jason A. Zweig
                                                                                 Jason A. Zweig

010260-11 470123 V1